## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NORA M. BARRAFORD, ) <br> Individually and as Executrix of the ) <br> Estate of DANIEL M. BARRAFORD, by ) <br> her agent THE FEDERAL-MOGUL ) <br> ASBESTOS PERSONAL INJURY TRUST, ) <br> ) <br>     Plaintiff, ) <br> ) <br>         v. ) <br> ) <br> T&N LIMITED, ) <br> f/k/a T&N PLC, f/k/a Turner & Newall Plc, ) <br> and f/k/a Turner & Newall Limited; and ) <br> TAF INTERNATIONAL LIMITED, ) <br> f/k/a Turners Asbestos Fibres Limited, and ) <br> Raw Asbestos Distributors Limited, ) <br> ) <br>     Defendants. ) | Civil Action No. <br> 12-cv-10013-FDS |
| KATHERINE LYDON, ) <br> Individually and as Executrix of the ) <br> Estate of JOHN T. LYDON, JR., by ) <br> her agent THE FEDERAL-MOGUL ) <br> ASBESTOS PERSONAL INJURY TRUST, ) <br> ) <br>     Plaintiff, ) <br> ) <br>         v. ) <br> ) <br> T&N LIMITED, ) <br> f/k/a T&N PLC, f/k/a Turner & Newall Plc, ) <br> and f/k/a Turner & Newall Limited; and ) <br> TAF INTERNATIONAL LIMITED, ) <br> f/k/a Turners Asbestos Fibres Limited, and ) <br> Raw Asbestos Distributors Limited, ) <br> ) <br>     Defendants. ) | Civil Action No. <br> 12-cv-10014-FDS |

**MEMORANDUM AND ORDER ON DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE**

**SAYLOR, J.**

This is a product liability action arising out of alleged asbestos exposure. Jurisdiction is based on diversity of citizenship. In the 1960s and 1970s, Daniel Barraford worked as an electrician and senior engineer on the construction of the Prudential Center in Boston. He died in 2002 as a result of mesothelioma. His widow, Nora Barraford, has brought this suit, contending that asbestos products produced by T&N Limited and TAF Limited International caused her husband's illness and death.

The complaint asserts six claims: negligence; breach of express and implied warranties; fraudulent concealment; malicious, willful, wanton, and reckless conduct or gross negligence; wrongful death; and loss of consortium. Defendant has moved for summary judgment and to strike certain items submitted by plaintiff in opposition to that motion. For the reasons set forth below, the motion for summary judgment will be denied, and the motion to strike will be granted in part and denied in part.

**I.      Factual Background**

The following facts are presented in the light most favorable to the non-moving party, the plaintiff.

    **A.      The Parties**

Plaintiff Nora Barraford is the widow and the executrix of the estate of Daniel Barraford. She asserts her claim through her agent, the Federal-Mogul Asbestos Personal Injury Trust, a Delaware statutory trust.

Defendant T&N Limited, formerly known as Turner & Newall Plc, T&N PLC, and

Turner & Newall Limited, and defendant TAF International Limited, formerly known as Turners Asbestos Fibres Limited and Raw Asbestos Distributors Limited, are foreign corporations.

### B. The Prudential Construction

From 1940 until approximately 1981, Daniel Barraford worked for the Prudential Insurance Company of America. (Pl. Ex. C, D). From the early 1960s to the 1970s, he was a senior engineer during the construction of the Prudential Center in Boston, Massachusetts. (Pl. Ex. D). He worked at the project on a daily basis in the early 1960's. (Pl. Ex. D, K at 19-22, 27-32).

Various products that contained asbestos were used to construct the buildings. Among them was Sprayed Limpet Asbestos, a product manufactured and sold by defendants. (Pl. Ex. E, F, K at 42, 85-87). The purpose of spraying asbestos products on the buildings' steel structures was to prevent the steel from melting in case of a fire. (Pl. Ex. K at 45). According to plaintiff, when workers applied the spray, material would blow up to highest levels of the tower as well as down to the street below. (Pl. Ex. A at 47-53, 68-70; *see also* Ex. H at 3, J at 2, K).

According to plaintiff, because Daniel Barraford was present on a regular basis at the site while Limpet was being sprayed, he inhaled or ingested asbestos fibers as a result.

### C. Daniel Barraford's Illness

In September 2002, doctors diagnosed Daniel Barraford with a malignant right pleural mesothelioma. (Pl. Ex. O at 6). He died in October 2002 of mesothelioma and related complications. (Pl. Ex. P). Plaintiff's expert, Dr. Gary Friedman, opined that Mr. Barraford's exposure to Limpet was a cause of his mesothelioma. (Pl. Ex. O at 7).

**D.     The State Case**

On October 18, 2004, Nora Barraford, individually and as executrix of the estate of Daniel Barraford, filed an action in Massachusetts Superior Court against thirty defendants. (Mot. S.J. Ex. D). She contended that her husband was exposed to defendants' asbestos and asbestos-containing materials and that those products caused his mesothelioma and eventual death. (*Id.*) She brought claims against all defendants for negligence, breach of express and implied warranties, wrongful death, and loss of consortium.[1] Neither T&N Limited or TAF International Limited was a party to that action. (*Id.*) At the time, both were in bankruptcy. (Opp. Mot. S.J. at 4; *see Official Comm. of Asbestos Claimants v. Asbestos Prop. Damage Comm.* (In re *Federal-Mogul Global Inc.*), 330 B.R. 133 (D. Del. 2005)).

The defendants in the Superior Court case deposed Roger J. Heinen on September 20, 2007. (*See* Pl. Ex. K). Among the nineteen lawyers present on behalf of the various defendants was counsel for the general contractor for the Prudential construction. (*Id.*) Heinen testified that he worked closely with Daniel Barraford, and that the two of them were present at the construction site on a daily basis and while asbestos fireproof spraying was ongoing. (*Id.* at 28-29, 41-46, 66, 83-87, 91-96). While Heinen did not remember the name of the particular asbestos fireproof spray utilized, he recalled a later action by Prudential Insurance Company against Turner & Newall regarding Limpet. (*Id.* at 42). Heinen died on September 25, 2010. (Pl. Ex. L).

---

[1] Plaintiff also brought claims against one defendant, Metropolitan Life Insurance Co., for conspiracy or concert of action, undertaking of special duty. (*Id.*)

### E.     Procedural History

On November 22, 2011, plaintiff filed the present action against defendants in the Superior Court. On January 4, 2012, defendants removed to this Court on the basis of diversity jurisdiction.

## II.     Standard of Review

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotations omitted). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). In evaluating a summary judgment motion, the Court indulges all reasonable inferences in favor of the non-moving party. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

As a general matter, only evidence that would be admissible at trial may be considered in connection with a motion for summary judgment. *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49-51 (1st Cir. 1990). Plaintiff, as the proponent of the challenged evidence, "bears the burden"

of proving admissibility.  *United States v. Bartelho*, 129 F.3d 663, 670 (1st Cir. 1997).

**III.   Analysis**

    **A.   Defendants' Motion to Strike**

        **1.   Heinen Deposition**

Plaintiff submitted the transcript of the deposition of Roger Heinen in opposition to defendant's motion for summary judgment.  (*See* Pl. Ex. K).  Defendants have moved to strike the deposition on the grounds that it is inadmissible hearsay.  Plaintiff contends that it falls within the exception for former testimony of Fed. R. Evid. 804 or, in the alternative, under the residual exception of Fed. R. Evid. 807.

Rule 804 creates a hearsay exception for the former testimony of unavailable declarants. Heinen, now deceased, clearly meets the unavailability requirement.  Fed. R. Evid. 804(a)(4). The Rule defines "former testimony" as testimony that:

> (A) was given as a witness at a . . . lawful deposition, whether given during the current proceeding or a different one; and
>
> (B) is now offered against a party who had — or, in a civil case, whose predecessor in interest had — an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Fed. R. Evid. 804(b)(1).  There is no dispute that Heinen's testimony was given as a witness at a deposition.  The question presented is thus whether the defendants in the state case were the defendants' predecessors-in-interest who had an opportunity and similar motive to develop Heinen's testimony as the defendants here.  *See United States v. Salerno*, 505 U.S. 317, 321 (1992) ("Nothing in the language of Rule 804(b)(1) suggests that a court may admit former testimony absent satisfaction of each of the Rule's elements."); *Bartelho*, 129 F.3d at 669 (stating that "the proponent must satisfy both requirements of the rule: unavailability and similar

motive and opportunity to develop the challenged testimony").[2]

There need not be an agency relationship between the parties in the current and former proceedings to find there is similar motive and opportunity. *Holmquist v. Farm Family Cas. Ins. Co.*, 800 F. Supp. 2d 305, 310 (D. Me. 2011); *see Horne v. Owens-Corning Fiberglas Corp.*, 4 F.3d 276, 283 (4th Cir. 1993) ("[P]rivity is not the gravamen of the analysis."). Instead, "where the parties in the two proceedings differ, there must be 'sufficient identity of issues to ensure that cross examination in the former case was directed to the issues presently relevant, and that the former parties were the same in motive and interest.'" *Holmquist*, 800 F. Supp. 2d at 310 (quoting *Hicks Co. v. Commissioner*, 470 F.2d 87, 90 (1st Cir. 1972)). Whether the former and current parties had a "similar motive" is a two-part inquiry: first, "whether the questioner is on the same side of the same issue at both proceedings," and second, "whether the questioner had a substantially similar interest in asserting that side of the issue." *Bartelho*, 129 F.3d at 671.

The topic and scope of the state case and the present case are the same: whether Daniel Barraford was exposed to asbestos; if yes, to which entity's asbestos products was he exposed; and whether that asbestos exposure caused his illness and eventual death. Both focus on his work at the Prudential Center during its construction. The defendants in both cases sought to prove that Daniel Barraford was not exposed to asbestos, or that he was not exposed to their respective company's asbestos product, and that any exposure to their product did not cause his injuries.

Here, the questioners who deposed Heinen had substantially similar interests in that

---

[2] The Federal Rules of Civil Procedure similarly provide that a deposition may be used in a later action only if it "involv[es] the same subject matter between the same parties, or their representatives or *successors in interest* . . . ." Fed. R. Civ. P. 32(a)(8) (emphasis added).

deposition, and the case overall, as defendants here.  Each defendant in the state case sought to probe Heinen's recollection about Daniel Barraford's exposure to asbestos and to which company's products he was exposed.  Realistically, each sought to implicate the other companies' products and avoid responsibility on behalf of their own client.  While defendants here are correct that no one present in that room sought "zealously" to "down play[]" the liability of T&N and TAF, the end result of nineteen lawyers deposing one witness was that the use of asbestos products on the site was thoroughly explored.  In addition, counsel for Perini Construction Company, the general contractor, questioned Heinen specifically about the spray fireproofing and had an interest in testing his credibility as to that topic because that company's liability was implicated.  (Pl. Ex. K at 80-102).  Also, counsel for another defendant asked about reasons Heinen might be biased.  (*Id.* at 64).  And Heinen did not evade or refuse to answer any questions. *See SEC v. Ficken*, 546 F.3d 45, 53-54 (1st Cir. 2008) (finding that the government "did not have the opportunity to develop [deponent's] initial testimony because he asserted his Fifth Amendment privilege or otherwise refused to answer questions" ).  All told, the inquiry in the state case satisfies the "narrow concerns of ensuring the reliability of evidence admitted at trial."  *Bartelho*, 129 F.3d at 671 (quoting *Salerno*, 505 U.S. at 325-26 (Blackmun, J. concurring))); *see Clay v. Johns-Manville Sales Corp.*, 722 F.2d 1289, 1293-1295 (6th Cir. 1983) (admitting deposition of a long-time employee of the defendant who testified about the extent to which the defendant knew about the dangers of asbestos); *cf. Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1161 (4th Cir. 1986) (excluding deposition taken in Pittsburgh Corning plant worker's suit in a suit by a Pittsburgh Corning pipefitter because the exposure of the two men to asbestos in the plant differed).

In short, because there was sufficient identity of issues and because the state defendants had an opportunity and similar motive to develop Heinen's testimony as defendants here, the deposition testimony falls within the hearsay exception of Fed. R. Evid. 804. Accordingly, the court will deny defendants' motion to strike the exhibit as hearsay.[3]

### 2. Plaintiff's Initial Disclosures

Plaintiff also attached as an exhibit her initial disclosures made pursuant to Rule 26. (*See* Pl. Ex. B). Defendants seek to strike the item as hearsay. Plaintiff contends that they are not offered for the truth of the matter asserted; plaintiff apparently attached the disclosures in response to defendants' charge that her only product identification witness was Louis Edgerly. The truth of the contents of plaintiff's disclosure—which, among other things, names employees, designees, and agents of defendants as potential witnesses—is immaterial for present purposes. Plaintiff submitted the list for the purpose of showing that she has designated additional witnesses. Because the truth of the statements within the initial disclosures is not at issue, the exhibit will not be struck.

### 3. Newspaper Advertisement

Next, defendants seek to strike as hearsay a newspaper advertisement concerning defendants' product and its use at the Prudential Center. (*See* Pl. Ex. F). Plaintiff asserts that the article qualifies as a statement in an ancient document, falling under the exception in Federal Rule of Evidence 803(16). That rule excepts from the hearsay bar "[a] statement in a document that is at least 20 years old and whose authenticity is established." The document appears to be a

---

[3] The Court does not need to reach the issue of whether the deposition falls under the residual exception of Rule 807.

portion of the advertising section of the Boston Sunday Herald from December 20, 1964. The exhibit therefore meets the first requirement of being more than twenty years old. Under Rule 901(8), an ancient document can be self-authenticating if it "(A) is in a condition that creates no suspicion about its authenticity; (B) was in a place where, if authentic, it would likely be; and (c) is at least 20 years old when offered." Fed. R. Evid. 901(8). Because there appears to be no genuine dispute about its age or authenticity, the exhibit will not be struck.

### 4. Medical Journal Articles

Defendant also seeks to strike three articles from medical journals that plaintiff attached as exhibits to her opposition, again on the ground that they are hearsay. Plaintiff contends that they fall under the learned-treatise exception to the hearsay rule. *See* Fed. R. Evid. 803(18). A statement in "learned treatises, periodicals, or pamphlets" falls under this exception if:

> (A) the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and
>
> (B) the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice.

Fed. R. Evid. 803(18). Here, the expert report plaintiff attached does not rely on any of these three articles. (*See* Pl. Ex. O). Instead, plaintiff uses the articles to support her Statement of Additional Facts regarding the health effects of exposure to asbestos. (*See* Opp. Mot. S.J. at 6-8). Because these articles do not fall within any exception, they are inadmissible hearsay and will be struck.

### 5. Plaintiff's Statement of Additional Facts

Finally, defendants have moved to strike specified "Additional Facts" in plaintiff's opposition, presumably on the ground that they rely on inadmissible hearsay evidence. Because

the court has found that Exhibits B, F, and K are within a hearsay exception, "Additional Facts" Nos. 4, 8, 9, 10, and 11 have sufficient support in the record and will not be struck. However, the entirety of "Additional Facts" Nos. 6 and 17 rely exclusively on Exhibits I, M, and N, the medical journal articles. Accordingly, the motion to strike will be granted as to those two items.

### B. Defendants' Motion for Summary Judgment

Defendants have also moved for summary judgment on the ground that plaintiff cannot demonstrate sufficient proof of causation.

"To prove causation in an asbestos case, the plaintiff must establish (1) that the defendant's product contained asbestos (product identification), (2) that the victim was exposed to the asbestos in the defendant's product (exposure), and (3) that such exposure was a substantial contributing factor in causing harm to the victim (substantial factor)." *Morin v. Autozone Northeast, Inc.*, 79 Mass. App. Ct. 39, 42 (2011) (citing *Welch v. Keene Corp.*, 31 Mass. App. Ct. 157, 161-162 (1991)). Defendants apparently concede that their product, the Limpet fireproofing spray, contains asbestos. But they contend that Daniel Barraford was not exposed to their product and that, if he was exposed, the exposure was not a substantial contributing factor to his mesothelioma and death.

As to exposure, neither Massachusetts nor the First Circuit has adopted the "frequency, regularity and proximity test" upon which defendants rely. (*See* Mot. S.J. at 8 (citing *Lohrmann*, 782 F.2d at 1163)). Instead, Massachusetts courts have required, in order to state a triable claim, that the person "worked with, or in close proximity to, the defendants' asbestos products." *Welch*, 31 Mass. App. Ct. at 161 (1991); *see also Roehling v. National Gypsum Co. Gold Bond Bldg. Products*, 786 F.2d 1225, 1228 (4th Cir. 1986) ("The evidence, circumstantial as it may be,

need only establish that [plaintiff] was in the same vicinity as witnesses who can identify the products causing the asbestos dust that all people in that area, not just the product handlers, inhaled."). The exposure must be "more than just casual or minimum exposure." *O'Connor v. Raymark Industries, Inc.*, 401 Mass. 586, 588 (1988). Reading the facts in the light most favorable to the plaintiff, a juror could reasonably conclude that Limpet fireproofing spray was used to construct the Prudential Tower. (Opp. Mot. S.J. Exs. A, F). The spraying process was ongoing, and released dust into the air that would travel to multiple levels of the building and to the street below. (*Id.* Ex. A, J, K). Daniel Barraford was present on a daily basis at the construction site while spraying occurred. (*Id.* Ex. K). Thus, plaintiff has put forth sufficient evidence of exposure to defendants' product to defeat summary judgment.

As to causation, "the plaintiff need not produce evidence of 'but for' causation on the part of the targeted product, but only of its contribution to causation of the resulting injury." *Morin*, 79 Mass. App. Ct. at 43; *see also Kreppein v. Celotex Corp.*, 969 F.2d 1424, 1425-1426 (2d Cir. 1992) (rejecting a "strict requirement for proof of causation" in asbestos cases); *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806, 817-818 (9th Cir. 1992) (adopting a "less restrictive" approach to causation in asbestos cases). Plaintiff has also submitted expert testimony that Daniel Barraford's exposure to Limpet was a cause of his mesothelioma and that mesothelioma caused his death. (Opp. Mot. S.J. Ex. O at 7; *id.* Ex. P). Plaintiff has thus presented sufficient evidence of causation.[4]

In sum, the court finds that plaintiff has provided sufficient proof of her claims such that

---

[4] Because the Court finds that plaintiff has a viable claim, it need not rule on defendants' argument that a plaintiff cannot make out a loss of consortium claim absent an underlying tortious act. (Mot. S.J. at 9-10).

material claims are in dispute and defendants are not entitled to judgment as a matter of law.

Accordingly, the court will deny the motion for summary judgment.

## IV.      Conclusion

For the foregoing reasons, defendant's motion for summary judgment is DENIED.

Defendant's motion to strike is GRANTED in part and DENIED in part.

**So ordered.**

/s/ F. Dennis Saylor<br>
F. Dennis Saylor IV<br>
United States District Judge

Dated: September 24, 2013